IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J.D.K. o/b/o E.M.J. (Minor),[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:23-CV-2650-BR |
| | § | |
| MARTIN O'MALLEY, Acting | § | |
| Commissioner of the Social Security | § | |
| Administration,[2] | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff J.D.K. o/b/o E.M.J. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Defendant"), who denied Plaintiff's claim for Child's Supplemental Security Income ("SSI"). (ECF 1; ECF 11-1 at 5–30). The parties voluntarily consented to have the undersigned conduct all proceedings in this case to disposition in accordance with the provisions of 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73. (ECF 5; ECF 8). After considering the pleadings, briefs, and administrative record, the Court AFFIRMS the Commissioner's decision.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is "automatically substituted" for Kilolo Kijakazi as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## I. BACKGROUND

Plaintiff J.D.K., on behalf of his minor son—E.M.J.—filed a claim for SSI. (ECF 11-1 at 18). E.M.J. was an adolescent when his application was filed and when his SSI claim was denied. (ECF 11-1 at 19). The ALJ denied Plaintiff's claim on July 13, 2023, finding E.M.J.'s impairments did not functionally equal the Listings. (ECF 11-1 at 18–29). The Appeals Council denied his request for review on October 2, 2023. (ECF 11-1 at 5). Having exhausted his administrative remedies, Plaintiff seeks judicial review on behalf of E.M.J. *See* 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). "Substantial evidence is 'more than a mere scintilla and less than a preponderance.'" *Id.* (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The Commissioner [of the Social Security Administration], and not the courts, resolves conflicts in the evidence; thereafter, the Court may not 'reweigh the evidence or try the issues de novo.'" *Tomisha M.W. ex rel. T.M.W. v. Saul*, 2020 WL 1513453, at *2 (quoting *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam)). "Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his decision." *Id.* (citing *Copeland*, 771 F.3d at 923).

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's

decision or finds that the Commissioner made an error of law." *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995) (footnotes omitted). In sum, the district court may not reweigh the evidence or substitute its own judgment for that of the Commissioner; however, the district court must scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. *See Fields v. Bowen,* 805 F.2d 1168 (5th Cir.1986) (per curiam).

### III.   DISCUSSION

To determine whether a minor has a disability, an ALJ engages in a three-step process: "(1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment that is severe; and (3) whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability regulations." *Swist ex rel. Green v. Barnhart*, 177 F. App'x 414, 416 (5th Cir. 2006) (per curiam) (internal quotation marks and citations omitted).

Here, J.D.K. does not contest the ALJ's findings that E.M.J. is not engaged in substantial gainful activity, and that E.M.J. has severe impairments: autism spectrum disorder, anxiety, and depression. (ECF 11-1 at 19; ECF 12 at 4). Instead, J.D.K. contests the ALJ's findings with respect to step three. (*See* ECF 12). At step three, the ALJ found that E.M.J. has a "marked" limitation in the functional domain of "caring for yourself" but "less than marked" or "no" limitations in the other functional domains. (ECF 11-1 at 22).

At this step, the ALJ must determine whether the claimant's impairment leads to "a marked limitation" in two, "or an extreme limitation in one," of the following six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Swist*, 177 F. App'x at 416 (citing 20 C.F.R. § 416.926a(b)(1)). The ALJ "will find"

3

that the child has a "marked" limitation in a domain "…when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limits several activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation will be found "when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

J.D.K. specifically challenges the ALJ's finding that E.M.J. had a less than marked limitation in the domain of interacting and relating with others. (ECF 12 at 3). The Court's discussion will address this sole issue raised by J.D.K. in his brief. (*See* ECF 12).

Under the "interacting and relating with others" domain, the ALJ must consider "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of possessions of others." 20 C.F.R. § 416.926a(i). A child of E.M.J.'s age is expected to:

> be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

20 C.F.R. § 416.926a(i)(2)(v). The ALJ concluded E.M.J. had a less than marked limitation in this domain. (ECF 11-1 at 27–28).

The ALJ relied upon substantial evidence to conclude that E.M.J. had a less than marked limitation in the domain of interacting and relating with others. (ECF 11-1 at 18–29); *see Brown*

*v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (highlighting that it is the role of the Commissioner, not the courts, to resolve conflicts in the evidence). For example, the ALJ relied on the opinion of Dr. Stacey Fiore, a non-examining State agency consultant, who completed a Childhood Disability Evaluation Form for E.M.J. (ECF 11-1 at 28; ECF 11-1 at 73–75). Dr. Fiore opined that E.M.J. had less than a marked limitation in the domain of interacting and relating with others. (ECF 11-1 at 28; ECF 11-1 at 74). Likewise, the ALJ relied on the opinions of Anthony Barnes, M.D. and Sonya Adams, Psy.D.—two other non-examining State agency consultants—who both completed a Childhood Disability Form and also opined that E.M.J. had less than a marked limitation in the domain of interacting and relating with others. (ECF 11-1 79–81). In sum, the ALJ found the opinions of the three aforementioned State agency consultants to be "somewhat persuasive, as the evidence of record supports the extent of limitations they opined for… [as it pertains to] interacting and relating with others." (ECF 11-1 at 28). The ALJ did note, however, that "the records support recent difficulties with depression and anxiety that are more limiting than their opinions accounted for." (*Id*). It has been established that a State agency physician's assessment may properly amount to substantial evidence supporting the ALJ's findings. *See*, *e.g.*, *Beck v. Barnhart*, 205 F. App'x 207, 213–14 (5th Cir. 2006); *Kinser v. Colvin*, 2014 WL 6973022, at *3 (N.D. Tex. 2014); *Brown v. Astrue*, 2009 WL 64117, at *4 (N.D. Tex. 2009); *Zeno v. Barnhart*, 2005 WL 58822, at *9 (E.D. Tex. 2005).

Additional evidence cited by the ALJ supports her finding that E.M.J. had "less than a marked" limitation in the domain of interacting and relating with others. For example:

> On October 3, 2019, an Admission, Review and Dismissal (ARD)/IEP Committee meeting was held at the claimant's school. In the area of social skills, the claimant's strengths were assessed to have been asking questions, using self-control, and avoiding trouble. His needs were noted to have been self-advocacy and introducing himself. ***Under the area of study skills, the claimant's strengths included being attentive, asking questions, and working well with others***. His needs were noted

> to have been asking for help and turning in assignments on time. The claimant reportedly enjoyed playing on his phone and riding his bike outside of school settings. He indicated that he did not have many friends. The claimant was given accommodations at school such as: being given extra time to complete assignments; reduced assignments by 50% at teacher discretion; advanced warning of schedule changes; and reminders to stay on task.

(ECF 11-1 at 24) (emphasis added) (internal citations omitted).

Later in 2022, another ARD/IEP Committee meeting was held at E.M.J.'s school. (ECF 11-1 at 25). The ALJ included the following in her findings in reference to the 2022 meeting:

> On April 12, 2022, an Admission, Review and Dismissal (ARD)/IEP Committee meeting was held at the claimant's school. State mandated testing was reviewed. The claimant mastered his Writing STAAR, approached grade level of his MATH STAAR, and met grade level on his Reading STAAR tests the previous year. The claimant's 9 week/current grades at that time were reviewed, and listed as follows: math (84/90), reading/language arts (82/76), social studies (79/45), physical education (100), science (90/100), information technology (90/76), band (95/90), and art (100). ***His teachers described the claimant as a "great student," hard worker, "extremely intelligent," "very polite and well mannered," respectful, and a good listener.*** It was noted that he earned the highest grade in his entire class in math, and the highest grade on the science benchmark out of the entire 8th grade. However, it was noted that he struggled to timely turn in his work in information technology and in band. ***He was assessed to have strengths in reading, writing, science, math, and social studies, and that he no longer showed a need for support in the areas of study skills or social skills***. The ARD committee discussed removing the claimant from the special education program and switching him to the 504 program since he no longer showed a need for specialize instructions, and the committed agreed. ***It was determined that the claimant would not receive special education services any longer***.

(ECF 11-1 at 25) (emphasis added) (internal citations omitted).

J.D.K. objects to the ALJ's conclusion that E.M.J. has "less than a marked limitation in interacting and relating with others." (ECF 11-1 at 22). First, J.D.K relies on E.M.J.'s pediatrician, Dr. Farah Naz, who, after completing a functional capacity evaluation, found E.M.J. markedly limited in the domain of interacting and relating with others. (ECF 11-3 at 149). The ALJ addressed

Dr. Naz's opinion directly and found it unpersuasive. (*See* ECF 11-1 at 28). Specifically, the ALJ found Dr. Naz's opinion unpersuasive because:

> The definitions for limitations outlined on the [Medical Assessment] form do not seem to correlate with Social Security Regulations for a child of claimant's age. However, even more importantly, the extent of limitations opined by Dr. Naz are not supported by the objective evidence… the evidence does not support that the claimant has marked limitation… in interacting and relating with others… [I]n regard to claimant's ability to interact with others, the record reflects that claimant had a general anxiety and frustration over being misunderstood socially, and he was noted to have a variable mood/affect/speech at times. However, his teachers described him as 'very polite and well mannered,' respectful, and a good listener. This does not support marked limitation in this area.

(ECF 11-1 at 28–29) (internal citations omitted).

Second, J.D.K. relies on his own testimony at the hearing before the ALJ to assert that E.M.J. had a marked limitation in the domain of interacting and relating with others. (ECF 12 at 4–5). The ALJ acknowledged that "the testimony of the claimant's father and the treatment notes indicate that the claimant has difficulty making friends and expressing himself, and that he had been teased/bullied by his classmates which caused him to feel anxious and angry." (ECF 11-1 at 28). The ALJ noted, however, that E.M.J. "had good eye contact. His teachers described him as 'very polite and well mannered,' respectful, and a good listener." (ECF 11-1 at 27) (internal citations omitted). The ALJ further noted that:

> the claimant's therapy notes reflect that the claimant had some agitation and reportedly continued to have anxiety and frustration over being misunderstood socially. The claimant continued to indicate that he was upset by the actions of others in follow up notes from October 2022; however, he was noted to be cooperative and happy, and he was bright-faced, energetic, and was talkative and made eye contact. In sum, the record reflects that the claimant had a general anxiety and frustration over being misunderstood socially, and he was noted to have a variable mood/affect/speech at times. However, his teachers described him as "very polite and well mannered," respectful, and a good listener. This supports less than marked limitations in the domain area of interacting with others, and moderate

>limitations under the "B criteria" of interacting with others in the mental listings considered for this decision.

(ECF 11- 1 at 27–28) (internal citations omitted).

Dr. Nujeen Zibari—one of E.M.J.'s treating physicians—diagnosed E.M.J. with depression, anxiety, and autism. (ECF 11-1 at 25; ECF 11-2 at 71). Dr. Zibari recommended that E.M.J. be provided a safe place at school to go when he feels distracted by his classmates or by noises in the classroom. (ECF 11-1 at 25; ECF 11-2 at 71). The ALJ noted J.D.K.'s testimony at the hearing before the ALJ, which revealed that, although E.M.J. is still having outbursts, he is doing better with medication and treatment. (ECF 11-1 at 23 & 25) ("His medication was working, and he reportedly was not focusing on other kids so much.").

Additionally, there is evidence in the administrative record—not specifically cited by the ALJ—that supports her finding. As to the interacting and relating with others domain, the ALJ must consider "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of possessions of others." 20 C.F.R. § 416.926a(i).

E.M.J.'s ability to initiate and sustain emotional connections with others should be considered along with his ability to develop and use the language of his community. As noted on E.M.J.'s "Function Report Child Age 12 to 18th Birthday" (ECF 11-1 at 193–203), E.M.J. is able to answer the telephone and make phone calls, he is able to recall and tell stories he has heard, he is able to justify his actions, and he is able to ask for what he needs. (ECF 11-1 at 198). Although his communications with other kids at school is limited, he communicates with his family and teachers well. (*Id.* at 200). The evidence in the record also shows that E.M.J. developed connections with some people his age, which is evidenced by the notes from his psychotherapy appointments with his therapist—Jacqueline Hynes LPC-A, LCDC. (ECF 11-2 at 235–50; ECF

11-3 at 1–12). For example, Ms. Hynes noted that although E.M.J. struggles to make connections with kids at school, in August 2022 he "ha[d] lunch with one friend each day." (ECF 11-3 at 11 & 53). Therefore, there is evidence in the record that E.M.J. can initiate and sustain connections with others.

Ms. Hynes' progress notes also demonstrate that E.M.J. can address his emotions and make connections with others, even though he struggles to do so at times. (*See* ECF 11-2 at 235–50; ECF 11-3 at 1–12). On one occasion, Ms. Hynes noted that E.M.J. "report[ed] improvement in his communication with his dad about his disappointment." (ECF 11-3 at 140). By December of 2022, after a series of psychotherapy appointments, Ms. Hynes noted the following: "Client [E.M.J.] reports lack of depression and anxiety symptoms as well as his school bullies leaving him alone. Client reports he is sleeping well, taking care of himself, and participating in his special interests… Client reports he has been practicing diffusion using the glass box metaphor and reports it is helping him through painful inner experiences." (ECF 11-3 at 142) (spelling errors in original corrected). Ms. Hynes' note is evidence that E.M.J. is feeling more confident at school and learning how to implement effective coping mechanisms.

E.M.J.'s ability to cooperate with others should also be considered. As noted on one of E.M.J.'s Psychotherapy Intake Notes, his strengths include "kindness to others, fair/moral compass, gentleman." (ECF 11-3 at 27). E.M.J.'s listed strengths are evidence that he cooperates with others and generally understands how to behave socially. In general, there is evidence in E.M.J.'s Psychotherapy Progress Notes tending to show he can make emotional connections and cooperates well with others.

Moreover, how well E.M.J. complies with rules should be considered. The administrative record reveals that E.M.J. complies with rules quite well. In fact, Dr. Zibari noted that E.M.J. is

"[b]ig on following rules and gets stressed out when kids don't." (ECF 11-2 at 220 & 231—Dr. Zibari Appointment Records). Additionally, E.M.J.'s 8th grade band teacher described him as "[a]lways prepared for class and very responsive to instruction." (ECF 11-1 at 206). E.M.J.'s 8th grade "Info Tech" teacher described him as "very bright[,] and great at advocating for himself and clarifying instructions/expectations." (*Id.*). Likewise, E.M.J.'s "Function Report Child Age 12 to 18th Birthday" (ECF 11-1 at 193–203) further indicates that E.M.J. obeys rules. (*Id.* at 201). There is substantial evidence E.M.J. "listens well," complies with rules, "participates in class," "contributes to classroom discussions," "asks excellent questions," and is "very polite." (*Id.* at 206).

Although the ALJ did not specifically cite every piece evidence to support her findings, the entire administrative record was considered as evidence. In short, substantial evidence in the record supports her findings. (*See* ECF 11-1 at 22) ("[T]he undersigned has considered all of the relevant evidence in the case record."). After considering the evidence, the ALJ determined that E.M.J. had less than a marked limitation in the domain of interacting and relating with others. The ALJ adequately addressed the evidence to find that Plaintiff does not have an "extreme" or "marked" limitation in the domain of interacting and relating with others. (ECF 11-1 at 27–28).

The Fifth Circuit has stated that "[t]he ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). Likewise, the Fifth Circuit has stated that "[t]he ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected." *Penalver v. Barnhart*, No. 04-1107, 2005 U.S. Dist. LEXIS 21238, at *21 (W.D. Tex. July 13, 2005). Although the ALJ did not discuss

every piece of evidence in her findings, the ALJ considered the relevant evidence in the record, evaluated the whole child in making findings regarding functional equivalence, and considered all the symptoms and opinions of experts as required by the regulations.

## IV.    CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

ENTERED June 6, 2024.

                                                 LEE ANN RENO
                                                 UNITED STATES MAGISTRATE JUDGE